JOLIN and others, Appellants, v. OSTER and others, Respondents.*

*No. 170. Argued October 27, 1969.—Decided November 25, 1969.*
(Also reported in 172 N. W. 2d 12.)

* Motion for rehearing denied, with costs, on February 3, 1970.

624

For the appellants there were briefs by *Whyte, Hirsch-boeck, Minahan, Harding & Harland* and by *Kersten & McKinnon,* attorneys, and *Victor M. Harding* and *George P. Kersten* of counsel, all of Milwaukee, and oral argument by *George P. Kersten* and *Victor M. Harding.*

For the respondents John Oster, Jr., and Deltrol Corporation there was a brief and oral argument by *Ray T. McCann,* attorney, and *John T. McCann* of counsel, both of Milwaukee.

For the respondent Marshall & Ilsley Bank there was a brief by *Grootemaat, Cook & Franke* and by *Churchill, Duback & Smith,* attorneys, and *Francis R. Croak* of counsel, all of Milwaukee, and oral argument by *Mr. Croak.*

HALLOWS, C. J.  On this appeal many issues are raised but most of them need not be discussed in view of the necessity for a new trial to determine the issues of the existence of a joint venture, breach and damages.

In 1958 Gerald Jolin formed a family partnership called "Gerald Jolin and Sons" and engaged in the recreational land development business for the next three years. This business consisted of purchasing raw land, developing, and subdividing it, and then selling it on land contracts to retail customers. The method of operation was for Jolin to borrow moneys, purchase the land, and to use the individual land contracts as collateral for new loans

from which he would pay overhead, salaries and purchase additional land for development.

The business was severely hampered because the money which was generally borrowed from Thorp Finance Corporation carried 12 percent interest. In 1961 Jolin met Oster, whom he was led to believe had financial resources and banking connections by which better credit terms could be obtained for the business. Jolin and Oster on November 17, 1961, signed an agreement which is the foundation of this lawsuit.

Briefly, this agreement recited the parties would form a corporation for the purpose of carrying on an expanded recreational land business; and that they were aware the "close corporation vehicle" being used by them and the nature of the business required that many rules of association of a partnership must necessarily prevail in the actual operation of the business. It was agreed that a corporation called Campfire Land Company, Inc. (Campfire) would be organized and the Jolin partnership would convey all its assets for one half of the stock; and Oster and members of his family would purchase the other one half of the stock for $120,000. Oster also agreed to loan the corporation $30,000 for five years at six percent interest. It was agreed that Jolin would be executive vice-president and manage the affairs of the corporation except for the financing aspects of the business which Oster was to "be in charge of." The directors were agreed upon and other provisions provided for.

The complaint alleged this contract created a joint venture between Jolin and Oster. The answer denies the allegation. The complaint alleges Oster breached his fiduciary obligations by:

(a) Failing to secure financing for Campfire at the best terms obtainable, and loaning borrowed funds to Campfire at high rates of interest and at a secret profit to himself and his family;

(b) using his control of the Marshall & Ilsley Bank (M & I Bank) loan (through the Deltrol Corporation (Deltrol) guaranty) and his creditor position to cut off Campfire's credit and force Jolin to turn over to Oster the management of Campfire;

(c) using his management position to divert profits to himself to the detriment of his joint venturer, Jolin.

The answer denies a breach of any fiduciary obligation by Oster.

The opinion of the parties differed whether the corporation made or lost money because one view was based on the tax returns and the other on balance sheets using accrual accounting. But whatever the case, the high interest rates continued to hamper the operation of the business although Oster did arrange for some loans at less than 12 percent interest. Thorp Finance Corporation continued to provide the bulk of the capital at 12 percent interest. In 1961 Oster made the $30,000 loan at six percent and in 1963 obtained a $150,000 line of credit from the defendant M & I Bank at nine percent by giving a $100,000 guaranty from the Oster controlled Deltrol. This line of credit was gradually increased to $350,000 in 1966 and the collateral requirement liberalized. Further, Oster, either directly or indirectly, arranged for the borrowing of money by members of his family or by family-owned corporations from the M & I Bank at four and one-half percent interest and the loaning of this money to Campfire at 12 percent interest.

In the spring of 1965, Jolin attempted to remedy the high cost of capital by selling collateral-trust notes. These notes were to be secured by placing the land contracts in trust under a trust indenture. It was planned the proceeds of the sale of these six-percent-interest securities would be used to retire the high-interest loans.

Jolin claimed the M & I Bank agreed to be the trustee and to purchase $100,000 of these notes for its own account. Jolin also claimed that Oster, Deltrol, and the

M & I Bank entered into an agreement which caused this plan to fail. In proof thereof he relies in part on the refusal of the M & I Bank to buy $100,000 of the notes and Oster's statement at a meeting of potential investors that the company was losing money. In the summer of 1966 the breakup between Jolin and Oster occurred. Oster offered to have Jolin buy him out and subsequently revoked Deltrol's guaranty of Campfire's line of credit at the M & I Bank. Jolin then resigned as an officer and director of Campfire and commenced this suit.

At the trial, both sides moved for a directed verdict. This led to some confusion because the trial court at first indicated it would submit only the issue of conspiracy to the jury and would reserve the other questions. The issues of whether the contract of November 17, 1961, created a joint venture and whether Oster breached his fiduciary obligations were not submitted. On motions after verdict, Jolin submitted findings of fact on the issues not submitted to the jury. But the court then stated that the jury verdict was sustained by credible evidence and the issue of joint venture was not in the case. The trial court held a joint venture could not involve a continuing business but only a single transaction and the agreement could not regulate the conduct of the parties beyond the time of the creation of Campfire Land Company. The trial court also instructed the jury to disregard all testimony relating to the collateral-trust notes because it would be illegal for the M & I Bank as trustee to purchase them.

On this appeal Jolin argues it was error for the court not to submit the joint-venture question to the jury and it was error to instruct the jury to disregard the evidence concerning the collateral-trust notes.

The trial court relied on *Barry v. Kern* (1924), 184 Wis. 266, 199 N. W. 77, and *Reinig v. Nelson* (1929), 199 Wis. 482, 227 N. W. 14, in holding that the joint-venture issue was not in the case because a joint venture could

not involve more than a single transaction. As we read *Barry*, it does not hold that a joint venture must be so limited in all cases. *Barry* addressed itself to whether the agreement constituted a partnership or a joint venture. The question of a joint venture using a corporation as a vehicle of operation was not before the court. The agreement in *Barry*, held to be a joint venture, was between an owner of two lots and a carpenter for the building of two dwellings and the selling of the lots and the houses. The court pointed out there was little difference between a partnership and a joint venture excepting that the latter was "more limited and confined in its scope principally to a single transaction." The court also stated, at page 269, "Such an arrangement, if it related to a continuous business and if it contemplated numerous transactions, would clearly constitute a partnership. Being confined to one transaction, it comes in the class of joint adventures."

In *Reinig v. Nelson*, again the court had to decide whether a syndicate agreement created a joint-venture or a joint-stock company. The court relied on *Barry* and held the agreement created a joint venture. To the extent these cases imply a joint venture cannot exist for a course of business carried on through a corporation, they do not represent the modern view and do not control this appeal.

Jurisdictions are divided on the question of whether a joint adventure will continue to exist after the business is incorporated. The key commercial state of New York holds that a joint-venture agreement does not survive incorporation. *Weisman v. Awnair Corp. of America* (1957), 3 N. Y. 2d 444, 449, 144 N. E. 2d 415, 165 N. Y. Supp. 2d 745; *Loverdos v. Vomvouras* (1960), 23 Misc. 2d 464, 200 N. Y. Supp. 2d 921. In *Weisman*, the court of appeals affirmed the dismissal of the complaint and stated, "the rule is well settled that a joint venture may not be carried on by individuals *through* a corporate form. . . The two forms of business are mutually exclusive, each being governed by a separate body of law."

Generally the courts following the New York view require the person seeking relief to bring a stockholders' action. This is predicated on the theory that: "He cannot be a stockholder and seek relief as a copartner or as a joint venturer, for surely he is either one or the other." *Boag v. Thompson* (1924), 208 App. Div. 132, 135, 203 N. Y. Supp. 395, 398. Courts adopting this view argue that the associates should have decided which form of business they desired, and the law governing the enterprise will depend on that choice. However, the *Weisman* doctrine has been weakened by *Arditi v. Dubitzky* (2d Cir. 1965), 354 Fed. 2d 483, which held a complaint alleging a breach of a preincorporation joint-venture agreement, under which plaintiff was to help with financing of a construction project and defendant was to undertake all of the construction and management details, stated a cause of action under the law of New York and of New Jersey despite subsequent incorporation, because the parties intended the corporation to be merely an instrumentality of the joint venture.

In a growing number of jurisdictions, a preincorporation joint-adventure or partnership agreement providing for the use of a corporation as a medium for the venture survives the corporation.[1] In *MacMorris Sales Corp. v.*

---

[1] The following jurisdictions recognize joint ventures survive incorporation:

*United States: Wabash Ry. v. American Refrigerator Transit Co.* (8th Cir. 1925), 7 Fed. 2d 335, certiorari denied 270 U. S. 643, 46 Sup. Ct. 208, 70 L. Ed. 776;

*California: Elsbach v. Mulligan* (1943), 58 Cal. App. 2d 354, 136 Pac. 2d 651; *MacMorris Sales Corp. v. Kozak, supra;*

*Florida: Donahue v. Davis* (1953), 68 So. 2d 163;

*Illinois: Moss v. Waytz* (1955), 4 Ill. App. 2d 296, 124 N. E. 2d 91;

*Kansas: Campbell v. Campbell* (1967), 198 Kan. 181, 422 Pac. 2d 932;

*Maryland: DeBoy v. Harris* (1955), 207 Md. 212, 113 Atl. 2d 903;

*Massachusetts: Mendelsohn v. Leather Mfg. Corp.* (1950), 326 Mass. 226, 93 N. E. 2d 537;

*Kozak* (1968), 263 Cal. App. 2d 430, 69 Cal. Rptr. 719, the litigation arose out of an alleged breach of an oral agreement between Bowman and Kozak to form a corporation for the operation of a used-car business which they were to operate. Kozak was a used-auto sales-manager who had options but not the money to purchase leaseholds on property involving three used-car lots and the cars which were then part of the inventory of a business known as Nortown Auto Sales, Inc. Bowman was a businessman without experience in the auto business but he had money and credit. Within one week after the business began, a controversy arose and Bowman fired Kozak. Kozak then brought an action similar to the one at issue in this case. On appeal, the California court stated:

"While some of the court's findings appear to sound in fraud or suggest a cause of action for breach of fiduciary duties, it appears that the trial court's award of damages was founded on the enforcement of a pre-incorporation joint venture or partnership with the corporation considered a medium of the venture. (*Hunt v. Davis,* 135 Cal. 31, 66 Pac. 957.) In such cases, even though there is a corporation entity, a joint adventurer or partner may be treated as an equitable owner of assets contributed to the corporation. The use of the corporation as a medium for the venture, survives the corporation.

*Michigan: Latimer v. Piper* (1933), 261 Mich. 123, 246 N. W. 65; *Hathaway v. Porter Royalty Pool, Inc.* (1941), 296 Mich. 90, 295 N. W. 571;

*Missouri: Denny v. Guyton* (1931), 327 Mo. 1030, 40 S. W. 2d 562;

*Texas: Colonial Refrigerated Transportation, Inc. v. Mitchell* (5th Cir. 1968), 403 Fed. 2d 541.

The following jurisdictions do not recognize joint ventures as surviving incorporation:

*Minnesota: Seitz v. Michel* (1921), 148 Minn. 80, 181 N. W. 102;

*New York: Weisman v. Awnair Corp. of America, supra; Manacher v. Central Coal Co.* (1954), 284 App. Div. 380, 131 N. Y. Supp. 2d 671, affirmed, 308 N. Y. 784, 125 N. E. 2d 431; *Loverdos v. Vomvouras, supra;*

*New Jersey: Jackson v. Hooper* (1910), 76 N. J. Eq. 592, 75 Atl. 568.

" 'Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. . . .' (Justice CARDOZO, *Meinhard v. Salmon,* 249 N. Y. 458, 463–464, 164 N. E. 545, 546, 62 A. L. R. 1.)

" '[E]ach partner or associate occupies a fiduciary relationship to the others in all matters pertaining to the partnership enterprise.' (*Stenian v. Tashjian,* 178 Cal. 623, 627, 174 Pac. 883, 885.) (See also Fletcher Cyclopedia on Corporations, § 3997.1; Ballantine California Corporation Laws, § 183; 69 Harv. L. Rev. 563; 44 Cal. L. Rev. 590; U. C. L. A. L. Rev. 94) (*DeBoy v. Harris,* 207 Md. 212, 113 Atl. 2d 903)" 263 Cal. App. 2d at pages 438, 439.

In *Campbell v. Campbell* (1967), 198 Kan. 181, 422 Pac. 2d 932, two brothers (the plaintiff and the defendant) embarked upon a joint adventure for the manufacture and sale of patented items. The brothers agreed orally that each should share equally in the venture. The venture grew and, as a result, additional financing became necessary. It was agreed that a corporation should be organized for the sole purpose of raising additional capital to promote the manufacture and sale of the business' products. The corporation was formed, and the patent was assigned to the corporation. The two brothers shared equally in the majority of the shares held by the corporation and issued the remainder to nominal stockholders. Three years after the incorporation the defendant began secretly buying the stock held by the nominal stockholders. When the plaintiff learned of this, he demanded one half of the stock which the defendant had purchased. The defendant refused to sell. The trial court held the joint adventure was not terminated by the incorporation of the business and the attempted acquisition of stock was a breach of the fiduciary relationship. The Kansas Supreme Court affirmed the trial court's decision and ordered that 50 percent of the secretly acquired stock should be offered to the plaintiff.

*DeBoy v. Harris, supra,* was an action at law for damages for breach of an oral contract to create a joint venture, to operate through a corporation for the purpose

of purchasing and developing real estate. The plaintiff claimed that, in violation of the agreement, he was removed as an officer and director of the corporation, and an attempt was made to "water down" his stock interest by the issuance of additional shares to the other joint venturers. The court held the agreement created a joint venture. In *Colonial Refrigerated Transportation, Inc. v. Mitchell, supra,* the Fifth Circuit Court of Appeals, applying Texas law, found a joint adventure survived the corporation based on the intention of the parties.

Thus, although the early cases adopted the view that incorporation spelled the end of the joint venture, the later cases consistently have taken the view that where the intention of the parties is clearly expressed to use a corporation as a means of conducting the joint-venture business, the courts will give effect to their expressed intention, so long as the rights of innocent third persons are not prejudiced. We think this is the better rule and we adopt it.

Jolin was entitled to go to the jury on the questions of: (1) Whether the contract of November 17, 1961, created a joint venture; and (2) if it did, whether Oster breached such fiduciary duties; and (3) damages. For this purpose, a new trial must be granted but we think these issues between Jolin and Oster are the only issues which should be retried. The Marshall & Ilsley Bank and Deltrol are not concerned with the joint-venture agreement.

We need not decide whether the trial court was in error in instructing the jury to disregard the evidence relating to the collateral-trust notes. We agree with the M & I Bank the evidence did not sustain the existence of an agreement by it to conspire. Without such an agreement, there can be no conspiracy. *Scheit v. Duffy* (1946), 248 Wis. 174, 21 N. W. 2d 257. The dismissal of the complaint as to the plaintiffs other than Jolin is not before this court on appeal. The issue is not stated as an issue or argued in its principal brief. The other issues raised by the defendants have been considered; some of them are now rendered moot, some are in effect in-

ferentially decided for the defendants and the balance are without merit and need no discussion.

It is suggested by the trial judge in his opinion that this court could enter the proper judgment in the event we disagreed with him because both parties made motions for directed verdicts. Since the trial court did not pass on these motions, we decline to do so and besides we think a jury question is presented.

*By the Court.*—The judgment is reversed, and the cause remanded; the plaintiff Jolin is to have a new trial against Oster on the issues of fiduciary relationship, breach thereof, and damages; Jolin to have 75 percent of his costs against Oster; and the M & I Bank to have its costs including 30 pages of the supplemental appendix against Jolin; Deltrol to have no costs.

HEFFERNAN, J., took no part.