McDonald (Chester R.), a partner, under the firm name and style of McDonald Investment Company, Plaintiff and Respondent, v. McDonald (Ronald C.), and others, Defendants and Appellants: Bleser and another, Defendants and Respondents. [Case No. 52.]

McDonald (Chester R.), Plaintiff and Respondent, v. McDonald Lumber Company, Inc., and others, Defendants and Appellants: Bleser and another, Defendants and Respondents. [Case No. 53.]

Howerton and another, Appellants, v. McDonald (James L.) and others, Respondents. [Case No. 73.]

Estate of McDonald: McDonald (Chester R.) and others, Appellants, v. McDonald (Ronald C.), Executor, and others, Respondents. [Case No. 260.]

*Nos. 52, 53, 73, 260. Argued November 29, 1971.—Decided January 6, 1972.*
(Also reported in 192 N. W. 2d 903.)

For the appellants in Cases Nos. 52 and 53 there were briefs by *Bittner, Petitjean & Hinkfuss,* attorneys, and

*Richard G. Greenwood* of counsel, all of Green Bay, and oral argument by *Robert L. Bittner.*

For the plaintiff-respondent in Cases Nos. 52 and 53 there was a brief by *Kaftan, Kaftan, Kaftan & Kuehne, S. C.,* of Green Bay, and oral argument by *Robert J. Kaftan.*

For the defendants-respondents in Cases Nos. 52 and 53 there was a brief by *Habush, Gillick, Habush, Davis & Murphy* of Milwaukee, and oral argument by *Howard A. Davis.*

For the appellants in Case No. 73 there was a brief by *Habush, Gillick, Habush, Davis & Murphy* of Milwaukee, and oral argument by *Howard A. Davis.*

For the respondents in Case No. 73 there was a brief by *Bittner, Petitjean & Hinkfuss* of Green Bay, and oral argument by *Robert L. Bittner.*

For the appellant Chester R. McDonald in Case No. 260 there was a brief by *Kaftan, Kaftan, Kaftan & Kuehne, S. C.,* of Green Bay, and oral argument by *Robert J. Kaftan.*

For the appellants Shirley Howerton and Ora Bleser in Case No. 260 there was a brief by *Habush, Gillick, Habush, Davis & Murphy* of Milwaukee, and oral argument by *Howard A. Davis.*

For the respondent Ronald C. McDonald, successor executor, there was a brief in Case No. 260 by *Evrard, Evrard, Duffy, Holman, Faulds & Peterson* of Green Bay, and for respondents Ronald C. McDonald, James L. McDonald, and Robert L. McDonald, heirs at law of Chester S. McDonald, deceased, by *Robert L. Bittner* of Green Bay, and oral argument by *Mr. Bittner* and *Mr. Joseph P. Holman.*

HALLOWS, C. J. The many questions raised on these appeals require a brief statement of the bare-background facts which give rise to them. Chester S. McDonald and

Margaret E. McDonald, his wife, had six children: Ronald, Chester, Jr., James, Robert, Shirley Howerton, and Ora Bleser. Prior to 1950 Mr. and Mrs. McDonald, in their individual capacities operating under the name of McDonald Lumber Company, accumulated a substantial amount of real and personal properties and businesses. In 1950 they set up a partnership with their four sons although the youngest of them was still in grade school. One third of the ownership interest was assigned to Mr. McDonald, one third to Mrs. McDonald, and one third divided equally among the four sons. The division of profits was on an equal basis among the six partners. The partnership continued the use of the name McDonald Lumber Company.

In 1955, at the suggestion of an estate planner, a corporation was organized which took the name of McDonald Lumber Company, Inc., and the partnership's name was changed to McDonald Investment Company. The corporation took over part of the businesses and properties although no conveyances were then made. However, on August 3, 1960, Mr. and Mrs. McDonald deeded certain properties to the partnership and other properties to the corporation in accordance with a contract made just prior to incorporation. Shortly thereafter on August 15, 1960, Chester S. McDonald, Sr., died, leaving a will in which he gave all his property equally to his children. Mrs. McDonald was the executrix of the estate and filed an inventory in February, 1961, in which she showed her husband's interest in the partnership to be 18 and ½ percent and an ownership of 850 shares in the corporation. In 1964 Ronald McDonald, the eldest son, replaced his mother as executor of his father's estate and in November of 1965 Mrs. McDonald died, leaving a will in which she bequeathed her property equally to all her children. Ronald McDonald was appointed executor of her estate and became president

of the corporation to succeed her, as she had previously succeeded Mr. McDonald, Sr., as president.

After the death of the mother, dissension began to appear among the children. In 1967 Chester, Jr., was voted out of the corporation as a director and the number of directors reduced to include only Ronald, James, and Robert. In August, 1969, Chester's employment with the corporation was terminated. Within a month Chester commenced the action in Case No. 53 to dissolve the family corporation. The following month he commenced the action in Case No. 52 to dissolve the family partnership. On September 12, 1969, Chester, Jr., filed a petition in the probate court to remove Ronald as executor of his father's estate. On November 17, 1969, he objected to the final account on the ground his father's interest in the partnership was greater than 18 and 1/2 percent. In the meantime on November 10, 1969, his two sisters filed objections to the inventory and final account, asked for the removal of Ronald as executor on the ground of conflict of interest and for a discovery into the mental condition of their father at the time he made the conveyances of August 3, 1960. The sisters had previously, on October 19, 1969, commenced an action by service of a summons in Case No. 73 to set aside these deeds, but the complaint in this matter was not served until a year later in October, 1970.

*Cases Nos. 52 and 53.*

These cases were heard on July 8, 9, and 10, 1970. The original findings of fact and conclusions of law were personally drawn up by Circuit Judge ANDREW W. PARNELL. He found it was the intent of Chester S. McDonald, Sr., and Margaret E. McDonald, his wife, that interest in the family assets of each of the four sons should be equal, with an equal interest divided between

the daughters; that this intent was reflected by their statements and actions during their lifetimes. He also found it was the clear intent and understanding of the incorporators that the corporation was to be formed and used only to facilitate the management of the overall-partnership operations and for such inherent and incidental advantages and fringe benefits as it would contribute to the purpose; and that the corporation was organized for the main purpose of using it as a vehicle or medium of operation for part of the partnership business and was not organized to constitute an independent separate or nonintegrated entity. He also found the entire family and partnership ventures consisted of a single integrated operation and it was the intention of the parties to maintain and operate them as such, whether accomplished by means of partnership, corporation, family or joint-adventure procedures. As a conclusion of law, the trial court held the assets in the control or possession of the corporation were assets of the partnership or the family.

After further consideration on the resumption of the trial on February 1, 1971, additional findings of fact and conclusions of law were made on September 17, 1971. The court found there was no agreement between the parties that accounting fluctuations in the capital accounts in the partnership due to overdraws should increase or decrease their proprietary interest, but that profits were to be shared equally between the six partners and not in proportion to their proprietary interests which were continued unchanged. The court also found Ronald, James, and Robert had, by joint and concerted action, so conducted themselves in the business affairs of the partnership and of the corporation as to make it not reasonably practical or feasible to carry on the businesses on the partnership basis; and, importantly, that the assumption of exclusive control of the businesses by Ronald, James, and Robert operated to cause great eco-

nomic disadvantages to Chester R., Shirley, and Ora, as minority interest-holders, contrary to and wholly inconsistent with the express and implied intentions and purposes of their parents that there be equality in the sharing of interests and profits between their children in the businesses and properties.

As conclusions of law, the trial court found the total assets denominated as corporate or partnership assets were the sole property of the partnership and this partnership should be dissolved and its assets liquidated and distributed. This conclusion requires the dissolution of the corporation and its assets distributed either directly to the partners or to the partnership and then to the partners in proportion to their interest in the partnership as found by the court. For this purpose, a receiver was to be appointed. It was also concluded the findings and judgment of the probate court of Brown county in the estate of Chester S. McDonald, Sr., did not pre-empt the issues as to the partnership interest and was not res judicata. The court reserved jurisdiction to determine the final obligations of the partners and to make further determinations as would be necessary to implement and enforce the judgment.

In reaching this result, the circuit court relied on *Jolin v. Oster* (1969), 44 Wis. 2d 623, 172 N. W. 2d 12, which held a partnership could do business through the form of a corporation and the incorporation would not supersede or terminate the partnership as to that business. It is argued the *Jolin Case* is not applicable because there is no showing of fraud, the partnership agreement was not written, and there was a basis for estoppel and laches. We found none of these arguments persuasive.

While some of the cases [1] cited in *Jolin* involved claims that one of the partners or coadventurers had made mis-

---

[1] *Arditi v. Dubitzky* (2d Cir. 1965), 354 Fed. 2d 483; *Mendelsohn v. Leather Mfg. Corp.* (1950), 326 Mass. 226, 93 N. E. 2d 537; *Hathaway v. Porter Royalty Pool, Inc.* (1941), 296 Mich. 90, 295

representations or otherwise engaged in fraudulent conduct, no case cited therein stated nor any language in *Jolin* states its doctrine should apply only to remedy actual fraud. It is sufficient if the corporation is used by those in control contrary to the basic purpose of the partnership or of partners in creating the corporation. One must look upon the *Jolin* doctrine as treating the corporation as form only; the substance was the partnership. One of the cases relied on by *Jolin* was *DeBoy v. Harris* (1955), 207 Md. 212, 113 Atl. 2d 903, which did not involve fraud but merely a breach of contract. It is quite true the *Jolin* doctrine will often be used to prevent or remedy a fraud but the doctrine is not so restricted. A breach of a fiduciary obligation or simple contract-obligation predating the creation of the corporation is sufficient. *See Fortugno v. Hudson Manure Co.* (1958), 51 N. J. Super. 482, 144 Atl. 2d 207, and Comment, *Corporations—Survival of Joint Adventure Agreements*, 7 Washburn Law Journal (1967), 110.

There is no reason why the underlying partnership agreement must be in writing. The *Jolin Case* relied on *Campbell v. Campbell* (1967), 198 Kan. 181, 422 Pac. 2d 932, in which the agreement was not in writing. *See also: Tate v. Ballard* (1954), 243 Minn. 353, 68 N. W. 2d 261. The important thing is the existence of a valid agreement or understanding that the corporation is to be used as an alter ego or instrumentality to further the partnership business or purposes.

We find no basis for applying the doctrine of estoppel or laches. There was nothing inconsistent in the action of Chester, Jr., in partaking of the activities of the corporation over the years which would now foreclose him from asserting the corporation was an instrumentality by which the partnership carried on part of its

N. W. 571; *Elsbach v. Mulligan* (1943), 58 Cal. App. 2d 354, 136 Pac. 2d 651; *Donahue v. Davis* (Fla. 1953), 68 So. 2d 163.

business. If the corporation is to be an instrumentality, it should be operated like a corporation but it must promote the partnership purposes. The record shows much more could have been done to operate the corporation as a corporation should be operated, especially in the lifetime of McDonald, Sr. This failure is some evidence of the intent of the parties, although complete compliance with corporate laws would not necessarily mean the corporation was not the formal instrumentality of the partnership.

We find no laches on the facts. With the termination of Chester, Jr.'s, employment in 1969, which was the signal that three of the brothers were breaking the family fiduciary relationship, he timely brought suit. For laches to be a defense, there must be a right of action against the defendant, an unreasonable delay by the plaintiff, and prejudice to the defendant resulting from such delay. 27 Am. Jur. 2d, *Equity*, p. 701, sec. 162. Nobody was misled by Chester, Jr.'s, position.

The basic and dispositive issue which affects all these appeals was whether the corporation was a medium or vehicle of the partnership for operating part of its business. Obviously, there are two versions of the evidence, but if the trial court's findings are not against the great weight and clear preponderance of the evidence, they must be affirmed on appeal. We think the trial court's findings are supported by sufficient credible evidence. All witnesses testified Chester McDonald, Sr., was the dominant force in the family-business operation and upon his death, his wife succeeded him as such dominant force. Purchases of property which were used in the corporation and in the partnership businesses were owned of record by Chester S. McDonald, Sr., and his wife, or either one of them, at least up to a week before his death. At no time was money borrowed in the name of the corporation but instead Chester, Sr.,

assumed personal liability. For some years, the corporation and partnership operated the properties and businesses, although title to the real estate and personal property had not been transferred to either the partnership or the corporation. The delay of the transfer of these assets is indicative of Mr. McDonald's and his wife's intentions in respect to their ownership as distinguished from the profits from their operation. The brothers all during the existence of the partnership and corporation shared equally the profits of the partnership and salaries from the corporation. Even the two daughters received salaries without performing services. When the partnership was formed in 1950 and each son was credited with a $10,000 capital account, the youngest son was still a minor in grade school. The profits of the partnership were distributed equally to the sons without regard to the quality and quantity of their services. The treasury of the partnership seemed to be the family purse and the partners withdrew money for personal needs at will. It is claimed the withdrawals of McDonald, Sr., were so great as to cut down his ownership interest in the partnership property to 18 and $\frac{1}{2}$ percent although the title to the property was still in his or his wife's name. Although the initial distribution of stock in the corporation was unequal because of the accounting procedure used in reference to partnership capital accounts, an attempt was made to equalize the four sons' stockholdings. Mrs. McDonald, after her husband's death, made equal distribution of stock to her four sons.

Apparently the partnership and the corporation were formed at the suggestion of an estate planner who was both an attorney and an accountant. It is quite evident from the record that what was done was for tax purposes and for other benefits and was not considered to be a final division of the family inheritance. The form of

the management or direction of the business affairs of the partnership or corporation remained substantially unchanged during the life of Chester McDonald, Sr., and his wife, and thereafter. Normally, the death of a partner dissolves a partnership, but in this case even two deaths did not, although the estates were treated differently. McDonald, Sr.'s, estate received no profits after his death but the estate of Mrs. McDonald did receive a share of the profits. The situation exhibited in these appeals is not infrequent in family corporations where the family members between themselves think in terms of the family and pay little or no attention to legal structure or corporate entity regarding them as necessary red tape.

It would serve no purpose to delineate all the evidence supporting the trial court's conclusion the corporate entity was merely an instrumentality of the partnership and subservient to it for the conduct of the businesses of the McDonald family. Where a corporate form is resorted to as an instrumentality of a partnership, the corporate form may be disregarded upon the dissolution of the partnership. This may be done by declaring the property in the name of the corporation to be assets of the partnership and making the distribution of property directly to the partners in the dissolution of the partnership. *Fortugno v. Hudson Manure Co., supra.*

It is argued the corporation could not be an instrumentality of the partnership because of a buy-and-sell agreement binding upon stockholders which restricted the transfer of the stock. While a shareholder was prevented from transferring or otherwise disposing of his stock unless it was first offered to the corporation, this restriction would seem to be as consistent with the concept the corporation was an instrumentality as it is with the theory the corporation was wholly independent of and unrelated to the partnership. At least by this

restriction, strangers could be kept out of the partnership business and the corporation kept within the exclusive control of the members of the partnership. Admittedly, the giving by Mrs. McDonald of shares of stock to her daughters is inconsistent with the *Jolin* theory, but this isolated incident is not controlling on intent. The restriction has no present effect because it has no application to the liquidation of the corporation.

In making his findings, Judge PARNELL found the approval of the inventory and final account by the probate court in the estate of Chester McDonald, Sr., was not binding on the distribution of the partnership assets upon dissolution. We come to the same conclusion but on the ground it was error for the probate judge to approve the final account. This error will be discussed in connection with Case No. 260. Since that part of the judgment of the probate court approving the final account must be reversed, it presents no problem of being res judicata of Judge PARNELL's finding of McDonald, Sr.'s, ownership interest in the partnership.

### Case No. 260.

This appeal raises the issue of whether the executor of the estate of Chester S. McDonald, Sr., should have been removed, whether the inventory accurately showed the decedent's interest in the partnership, and whether the trial court went beyond matters before it in deciding the deeds executed by McDonald, Sr., shortly before his death were valid. The trial court was correct on this record in not removing Ronald as executor for failure to close the estate promptly.

Mere delay in closing an estate is not sufficient ground for removal if the delay was unavoidable. *Ford v. Ford* (1894), 88 Wis. 122, 59 N. W. 464; *Will of Zartner*

(1924), 183 Wis. 506, 198 N. W. 363. Ronald is not to be charged with any delay prior to becoming the executor in 1964. The reason for subsequent delays seems to have been a subject of the pretrial conference on October 30, 1969, but there is no record of this conference except a reference by the trial court that it was satisfied that insurmountable obstacles were encountered in closing the estate. Since there is no evidence before us to evaluate, we must assume the finding of the trial court is supported by the evidence although we have serious concern that any estate should be kept open for a period of nine years. Much of the difficulty in these appeals might have been avoided if the father's estate had been promptly closed.

The two daughters asked for a discovery proceeding to determine the mental capacity of their father a week before his death when he conveyed properties to the partnership and corporation. If these conveyances had not been made to the corporation and partnership and remained in the estate of the father and the mother, the two daughters would each inherit one sixth of these properties; but if the conveyances are valid, their interest is one sixth of the interest of their mother and father in the partnership. Consequently, it is to their advantage to have the deeds set aside and to the advantage of their brothers that the validity of the deeds be sustained. On this basis, the two daughters claim their brother Ronald should be removed because of a conflict of interest. The probate court allowed a discovery proceeding but did not order Ronald, the executor, to waive the privilege which would have allowed the daughters to have the testimony of the attending physicians as witnesses. Since the physician-patient privilege of a deceased person is held by his personal representative under sec. 885.21 (1) (d), formerly sec. 325.21 (1) (d), Stats., and extends to medical reports of an attending physician, *Leusink v. O'Don-*

*nell* (1949), 255 Wis. 627, 39 N. W. 2d 675, it was error for the court not to order the executor to waive this privilege when it heard the objections to the inventory and final account.

The issue of the correctness of the inventory was properly presented to the county court and was related to the validity of the deeds. After the discovery proceeding, the probate court held a hearing on July 15, 1970, on the objections to the inventory and final account. Judge MUELLER rendered his decision in November of 1970 and on December 1st entered an order finding the deeds were valid, approving the inventory and final account and denying the request to remove Ronald as executor. The trial court did not remove Ronald because it found the deeds valid and hence Ronald had no conflict of interest. This is putting the cart before the horse, but we do not need to reach the question of whether a determination of the validity of the deeds could be made without the medical evidence of the attending doctor, because regardless of the validity of these deeds, these properties were properly absent from the inventory and final account. The deeds were executed in fulfillment of a contract made by McDonald, Sr., and his wife to convey such properties to the partnership and the corporation; and even if McDonald, Sr., had not validly conveyed these properties in his lifetime, his executor would have been required to specifically perform his contract after his death. *See* sec. 316.52, Stats. Therefore, we find it unnecessary to reverse that much of Case No. 260 as concerns the deeds of August, 1960.

The basic question on this appeal is whether the inventory and final account correctly set forth McDonald, Sr.'s, interest. An inventory in an estate which is filed and appraised is prima facie evidence of the quantity, quality, and value of the decedent's property. Sec. 287.14, Stats. While the inventory was filed in 1961, the final account was not filed until 1968. In view of our af-

firmance in appeals Nos. 52 and 53, it is not now material how many shares of stock were listed in the inventory because the corporate assets are reflected in the partnership interest; it is this partnership interest which creates a real problem. The probate court held 18 and ½ percent interest in the partnership was correct because it reflected certain accounting practices employed by the partnership and the court was willing to accept the conclusion of an accountant. We think the trial court was in error. The partnership agreement was one-third interest to McDonald, Sr., one third to Mrs. McDonald and one third divided equally among the four sons. This cannot be changed by accounting but only by agreement. The ownership of assets of the partnership was intended to be static and not subject to yearly adjustment while the profits were divided on an equal basis between the six partners. In view of the intent of the partners, it is wrong for overdraws of profits to be charged against the capital account of the partners, especially McDonald, Sr., who had not yet conveyed the assets constituting the capital accounts. Accounting practices must fit the agreement of the parties—their agreement is not determined by an accounting practice.

We do not find any evidence that the method of accounting reflected the agreement relating to the ownership interest of the partners despite the fact the accounting method was used for tax returns. It is argued the tax reports, state and federal, and estate taxes were paid on the basis of 18 and ½ percent and accepted by the taxing authorities. This may be so but the acceptance by the taxing authorities is not controlling. If tax adjustments must now be made, the inconvenience resulting therefrom are inevitable problems resulting from reversals for error.

The finding of the circuit court that McDonald, Sr., owned one third of the partnership which owned all the corporate assets must be reflected in the final account

in the probate court and the executor should amend the inventory and final account accordingly. Only that part of the judgment approving the inventory and final account in respect to the partnership interest is reversed.

*Case No. 73.*

Although a summons in this action was served in October of 1969, the complaint was not served until October 12, 1970. Before the complaint was filed, Judge MUELLER had had the July 15, 1970, hearing in the probate court in Case No. 260 on the sisters' objection to the inventory filed November 10, 1969, but had not yet filed his opinion, which was done on November 23, 1970. Prior to this probate hearing, Circuit Judge PARNELL had heard Cases Nos. 52 and 53 on July 8, 9, 10, and made his first set of findings to dissolve the family partnership on October 9, 1970. Shortly after the order of Judge MUELLER on December 1, 1970, the defendants Ronald, James, Robert, McDonald Investment Company, and McDonald Lumber Company, moved for summary judgment dismissing the complaint on the ground Judge MUELLER'S judgment deciding the validity of the deeds to the corporation was res judicata. Judge PARNELL agreed and we agree. The issue was properly before Judge MUELLER —he had concurrent jurisdiction with the circuit court and the right to determine it first. It is quite true that if Judge MUELLER did not have concurrent jurisdiction of the issue of the validity of the deeds or we had reversed him for error, his judgment would not be res judicata.

The reversal of a judgment which is a basis of a claim of res judicata in a later action warrants reversal of the finding of res judicata in the later action. 46 Am. Jur. 2d, *Judgments,* p. 633, secs. 465 and 466 (1969) ; Annot. (1950), *Judgment as res judicata pending appeal or*

*motion for a new trial, or during the time allowed there-
for,* 9 A. L. R. 2d 984, 1014, sec. 10. At least, it is the
better practice to reverse the judgment in the second
cause even though it was correct when rendered. But
here we have not reversed the judgment of the county
court on this issue and so the judgment on this appeal
will stand.

### Motion for review.

Chester R. McDonald, in his motion for review in Cases
Nos. 52 and 53, raises three collateral contentions. He
claims he should receive the monthly amounts of $1,660
from August, 1969, to May, 1970, in addition to the
amounts after that date which were ordered placed in
the trust and later ordered paid to him by the trial
court. We find arguable merit to this contention. Ches-
ter R. McDonald also argues his brother Ronald should
be made to account for or explain the use of heavy road
grading machinery owned by the corporation for his
personal use. Because of the dearth of evidence on this
issue, we cannot grant this relief but believe the trial
court should consider the question. Lastly, it is argued
the court was in error in allowing one fourth of the fees
of the defendants' attorney Robert Bittner to be paid
by the defendant McDonald Lumber Company, Inc.,
rather than solely by Ronald, James, and Robert. Since
the corporation as such receives no benefit from this
litigation, we think the trial court should reconsider this
question.

*By the Court.*—The judgment in Cases Nos. 52 and 53
is affirmed, excepting in respect to the issue of Chester
R. McDonald's salary, Ronald McDonald's use of corpo-
rate assets, and the attorney's fees of Robert Bittner.
The cases are remanded for further proceedings to
liquidate the partnership and other matters not incon-
sistent with this opinion.

The judgment in Case No. 73 is affirmed.

The order in Case No. 260 is reversed insofar as it approves the inventory and final account in respect to the partnership interest of Chester S. McDonald, Sr., and remanded for further proceedings not inconsistent with this opinion.

HEFFERNAN, J., took no part.