73 N.J. Super. 550 (1962)
180 A.2d 359
CHARLES W. HUTCHINSON, ADMINISTRATOR OF THE ESTATE OF DONALD L. BUNNIN, DECEASED, PLAINTIFF,
v.
JOHN GOCELIAK AND NEW YORK LIFE INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 9, 1962.
*551 Messrs. Lamb, Langan & Blake, attorneys for plaintiff.
Mr. Jesse Moskowitz, attorney for defendant Goceliak.
Mr. John P. Nugent, attorney for defendant New York Life Insurance Co.
HERBERT, J.S.C.
This case involves the disposition of $30,082.28, the amount which became due upon a life insurance policy when Donald L. Bunnin was killed in an accident. The money was paid by the defendant New York Life Insurance Company to John Goceliak. Was that payment proper, and, if not, how can the error be corrected? If a proper payment for the insurance company to make, is Goceliak entitled to keep what he received, or are there equities requiring him to treat it as an asset of the partnership of which he and Bunnin were the partners when the *552 latter died? Some consideration of the insurance policy and of the partnership is called for in answering these questions.
Bunnin and Goceliak formed a partnership in 1955, naming their firm the Halladay Truck Leasing Company. There was no written partnership agreement. Goceliak, who was the operator of a garage, appears to have acquired a truck by foreclosing a lien, and Bunnin, without money to buy the truck, was willing to contribute to the partnership by matching his time and ability as a driver and business solicitor against Goceliak's vehicle. Halladay Truck Leasing Company never flourished. Goceliak testified that for a goodly portion of the firm's life there was no bank account. At times there were unpaid bills and unsatisfied judgments. Bunnin appears to have devoted his full working time to the affairs of the Halladay company, but Goceliak kept right on with his garage business which was not an activity of the partnership.
On August 8, 1957 Bunnin applied to the New York Life Insurance Company for a $20,000 policy to be made payable to Halladay Truck Leasing Co. John Gacos, the insurance agent who took the application, was subsequently notified by the insurance company that it would not issue the proposed policy on Bunnin's life unless Bunnin's partner was insured for the benefit of the firm in an equal amount. Efforts were made to persuade the insurance company to change its position and insure Bunnin only, but when these failed Goceliak filed an application dated September 28, 1957 for $15,000 of life insurance to be made payable to Halladay Truck Leasing Co. That application included a request for $5,000 of additional insurance in favor of Mrs. Goceliak.
If insurance policies had been issued upon the application of Bunnin dated August 8 and the application of Goceliak dated September 28 Halladay Truck Leasing Company would have been the beneficiary of both. No such policies were issued, however, because there was a sudden *553 change of plan and the New York Life Insurance Company executed and delivered a policy on the life of each man payable to the other, both policies being dated October 17, 1957, though bearing the "policy date" of October 1, 1957. The one insuring the life of Bunnin named the beneficiary in these words "John Goceliak, partner of the insured" and the similar policy on the life of Goceliak named as beneficiary "Donald L. Bunnin, partner of the insured." Both Goceliak and the agent Gacos testified that there was a decision shortly before the policies were issued, to drop the previous idea of naming Halladay Truck Leasing Company as beneficiary and to make Bunnin the beneficiary of the policy on Goceliak and Goceliak the beneficiary of the policy on Bunnin. There was testimony from Goceliak that a final decision about naming beneficiaries became important only when the two men were told that they could obtain insurance; that it was then decided that a survivor, not the firm, should be able to collect if his partner died, a decision which was explained to Gacos, who then obtained policies payable as described above. Gacos and Goceliak stated that when the policies were delivered Gacos explained to the partners that if one died, the insurance would be paid to the other. At the time of delivering the policies Gacos had both men sign again his company's regular application form. These applications were dated October 17, 1957 and, in contrast to the earlier applications mentioned above, specified that the beneficiary of the policy on Bunnin's life would be "John Goceliak, partner of the insured," and the beneficiary of the policy on Goceliak's life would be "Donald L. Bunnin, partner of the insured."
When Bunnin was killed on July 16, 1959 he was still Goceliak's partner in Halladay Truck Leasing Company and his life was still insured by the policy issued October 17, 1957. The policy contained a provision that "This policy and the application for it, a copy of which is attached hereto and made a part hereof, constitute the entire contract." Upon proof of Bunnin's death being submitted to *554 the insurance company by Goceliak, it issued a check to him which named as payee "John Goceliak." The amount of the check was $30,082.28, being the full face amount of the policy plus a double indemnity benefit for accidental death.
Against the insurance company plaintiff argues that the policy proceeds should have been paid by a check to the order of "John Goceliak, partner of the insured." Behind this argument are contentions that the insurance was really a partnership asset and that naming the payee of the check in the same words used on the face of the policy to designate its beneficiary would have preserved, in some way, the partnership status of the funds represented by the check. I do not agree with plaintiff, and conclude that the check which was issued to "John Goceliak" by the defendant New York Life Insurance Company was sufficient to discharge the company's obligations under the policy. There is authority which supports this conclusion. Doney v. Equitable Life Assurance Society, 97 N.J.L. 393, 396 (Sup. Ct. 1922), involved a certificate of life insurance naming as beneficiary "Florence K. Downey, Wife." In fact, Fred Doney, or Downey, the man insured, was living with Florence at the time of his death, but his only wife was the plaintiff, Alma Doney. The court reversed a judgment which had been entered in favor of Alma, and after citing a number of cases said,
"These authorities hold that, when the beneficiary clause names a particular individual, describing her as `wife,' that word is to be taken as mere descriptio personae, and that the name and not the description is to control."
No New Jersey decisions which apply the rule of the Doney case to a partner of the insured have been cited, and I have found none. Turning to other jurisdictions, Haberfield v. Mayer, 256 Pa. 151, 100 A. 587 (Sup. Ct. 1917), and Baciocco v. Prudential Ins. Co. of America, 22 F.2d 700 (N.D. Cal. 1927), affirmed 29 F.2d 966 (9 Cir. 1929), *555 cert. denied 279 U.S. 854, 49 S.Ct. 350, 73 L.Ed. 996, may be mentioned. Both held that life insurance money should be paid to the person named in the policy as a "partner" of the insured. That result was reached in Haberfield v. Mayer, even though the partnership had ended sometime before the death of the man whose life was covered by the policy.
At the trial of the present case, however, it was suggested that the policy on Bunnin's life should be compared to one payable to "John Doe, trustee," rather than to one using the word "wife," and thus indicating a purely personal, as distinguished from a fiduciary, relationship; and that such a comparison should lead to the conclusion that defendant insurance company ought to have recognized the fiduciary character of Goceliak's designation, "partner of the insured," by issuing a check to him bearing those words. Again, I cannot agree. Apart from the insurance policy, the partnership relationship between Bunnin and Goceliak, although having its fiduciary features like any partnership (see Blut v. Katz, 36 N.J. Super. 185, 191 (App. Div. 1955)), was for the primary purpose of carrying on a business while both men lived. I am satisfied that the policy payable to "John Goceliak, partner of the insured" should not be placed in the same class as one payable to "John Doe, Trustee" (or "Guardian" or "Executor"), where the word used has only a fiduciary connotation and negatives any personal interest in the policy on the part of the person whose name appears on it as beneficiary.
I conclude that the words "partner of the insured," as used in the policy on Bunnin's life, were descriptio personae. If it is asked why such words were used at all unless intended to show the capacity in which Goceliak would receive the payment, the answer is rather obvious: to indicate on the face of the policy that the requirement of insurable interest laid down in many jurisdictions was considered when the policy was issued. See Connecticut Mut. Life Ins. Co. v. Luchs, 108 U.S. 498, 2 S.Ct. 949, *556 27 L.Ed. 800 (1883); 44 C.J.S. Insurance § 210, p. 912; 29 Am. Jur., Insurance, § 372, p. 324; 70 A.L.R.2d 577, "Insurable interest of partner or partnership in life of partner."
There is another reason, and perhaps an even stronger one, for deciding that the New York Life Insurance Company fully discharged its obligations under the policy by the payment it made. Even if it be assumed that a debt was due to the partnership and not to Goceliak as an individual, there is the general rule that each partner has a right to collect and receive debts due to the firm, and that payment made to a partner amounts to payment to the partnership. Van Billiard v. Croft & Allen Co., 302 Pa. 349; 153 A. 555 (Sup. Ct. 1931); 40 Am. Jur., Partnership, § 158, p. 241. A surviving partner  in this case Goceliak  also has the duty of winding up the firm's affairs after his copartner has died, and this duty includes the collection of debts and obligations due the firm. 40 Am. Jur., Partnership, § 293, p. 332.
The plaintiff also argues that part of the insurance money should have been paid, in any event, to him. The policy on its first page states that $10,000 is the "face amount." A subsequent page, fastened to the main policy, is entitled "Ten Year Term Insurance Benefit" and the amount there specified is $5,000, to be paid by the insurance company "to the beneficiary." The only beneficiary named anywhere in the policy is "John Goceliak, partner of the insured." No blank is furnished on the "Ten Year Term" page for designating separately the payee for the amount of insurance there provided, and the contention that Bunnin's administrator should be paid because of the failure to name anyone else is without merit. Both segments of the policy, namely the $10,000 coverage of the first page and the $5,000 of ten-year term insurance (with the amounts doubled because of the accidental death), became payable to Goceliak because he was the beneficiary of the whole policy. This result is not affected by a statement *557 in the application signed by Bunnin that $10,000 is to be the "amount of the policy" in fact, the total amount of the policy was $15,000 and Goceliak, as stated, was the sole beneficiary named. What the plaintiff seeks, in effect, is that the main policy and the "Ten Year Term Insurance Benefit" be treated as entirely separate insurance contracts. The fallacy of such a theory is shown by the opening words of the page which provides the term insurance: "These provisions are attached to and made a part of Policy Number 26 178 767 on the life of Donald L. Bunnin" (the main policy).
Though the payment was made properly to Goceliak by the insurance company, an important question remains to be answered: Did the money in equity come into his hands as a partnership asset? The plaintiff argues vigorously that it did, and relies upon Quinn v. Leidinger, 107 N.J. Eq. 188 (Ch. 1930), affirmed 110 N.J. Eq. 663 (E. & A. 1932). In that case two partners, having become interested in the subject of life insurance through a comment of their banker, discussed with an insurance broker the form of policy that could be used to protect their business interests. The broker was told, "We want this insurance so if anything happens to either one of us, the one of us who is left will have the money to wind up the business or to carry on as he sees fit." He advised them that insurance payable to the partnership could not be taken out and that each man should take out insurance on his own life payable at death to his estate. Policies identical as to amount were obtained in that form and the premiums were paid from partnership funds. After Leidinger was killed in an accident and the administratrix  his widow  had collected the amount of the policy on his life, an action for an accounting was brought by Quinn, the surviving partner. The vice-chancellor determined that the intent of the partners had been to procure and carry insurance to protect the partnership. Accordingly, he ruled that Quinn was entitled to a credit in the accounting proceeding for one half of the insurance on Leidinger's life. The *558 opinion points out that all of the evidence presented, other than the policy language used to designate beneficiaries, indicated a plan to protect the partnership rather than merely to augment the estate of a deceased partner. Added to this was the uncontradicted testimony that the form of the policies had been influenced by the mistaken advice from the broker that the partnership itself could not be named as a beneficiary.
There are similarities between the present case and Quinn v. Leidinger, supra, but also marked differences. One difference is that no funds of Halladay Truck Leasing Company were used to pay premiums. Goceliak so testified, and added that at times he paid with his own money for both Bunnin and himself. Gacos, the agent, told of collecting the premiums monthly at the partnership's address in Jersey City, where he usually saw Goceliak and rarely saw Bunnin. Most of the payments were in cash, and the partner from whom Gacos made the collection would pay for both policies. The plaintiff produced no financial records of the firm or other evidence to indicate use of partnership money and, though his practical difficulties as an outsider in getting information may easily be imagined, he did not show a factual basis for applying the provision of the Uniform Partnership Law (R.S. 42:1-8 sub-sec. 2) which reads: "Unless the contrary intention appears, property acquired with partnership funds is partnership property."
Another difference between the present case and the Quinn case is that Bunnin and Goceliak made no mistake when the beneficiaries of their two policies were designated, while Quinn and Leidinger, as a result of the erroneous advice that their policies could not be made payable to their firm, did make a mistake which called for correction.
The testimony, already described, to the effect that Bunnin and Goceliak made a decision, shortly before the policies were issued, to drop Halladay Truck Leasing Company as beneficiary and shift to each other, was not contradicted. By way of challenging it, the most that plaintiff *559 has been able to do is to point out that Gacos, the insurance agent, when giving a deposition before trial, could not say why the change in the designation of a beneficiary occurred between the original application for insurance on Bunnin's life and the issuance of the policy in suit. At the trial Gacos explained that his deposition was taken without prior discussion or any sort of review to refresh his recollection of a transaction which took place three years earlier, while his testimony in court was given after examining the relevant papers, particularly one designated "Home Office Memorandum" containing what may be described as a diary of the steps leading up to the issuance of the policy on Bunnin; in the courtroom he could accordingly recall facts which he could not bring to mind when questioned as a deponent. This explanation of the contrast between deposition and trial testimony I find satisfactory, and I believe the account given by Gacos and Goceliak of the partners' decision to make Goceliak the owner and beneficiary of one policy and Bunnin the owner and beneficiary of the other.
Item 30 of the application attached to the policy in suit furnishes confirmation of the intent to make the insurance a personal asset of Goceliak. It was there specified, in effect, that if Goceliak had died before Bunnin and the policy had been kept in force, Goceliak's estate would have been entitled to payment at Bunnin's death. The application attached to the policy on Goceliak contains the same designation in favor of Bunnin's estate. Payment to the executor or administrator of a deceased partner when a surviving partner dies is not consistent with the theory that Goceliak, having outlived Bunnin, holds for the benefit of the firm the insurance he has collected, and such inconsistency is another reason for rejecting that theory.
I am satisfied that the terms of the policy  of which the application is a part  provide for insurance in favor of Goceliak personally and not in favor of the Bunnin-Goceliak partnership, and am further satisfied that there was no mistake in making the policy payable to Goceliak and no *560 misrepresentation or misunderstanding about the policy's effect. It follows that the plaintiff's attempt to have the insurance money adjudicated a partnership asset must be rejected, and I so find as a fact and so conclude as a matter of law.
This result is not inconsistent with the general purposes for which the partners wanted life insurance. As already noted, Bunnin was at first the sole applicant for insurance. His application specified that the policy would be payable to the firm. When the insurance company refused to insure one partner only, an unsuccessful attempt was made to persuade it to change position on the ground that Bunnin was the "key man" of the partnership. Then came Goceliak's first application, and it also designated the firm as beneficiary of the requested policy. Goceliak testified that the object of carrying life insurance was to protect him because he was the only one with an estate; that the partners thought the insurance would pay the debts, would "pay what I would have been left with if he died." The choice the two men made when they ultimately decided to have the policies payable to each other rather than to the firm was not a choice between inconsistent alternatives, but one to benefit the survivor individually rather than through his membership in the firm.
A comment should be made about the plaintiff's argument that testimony coming from Goceliak should meet the test of "clear and convincing proof" laid down by statute for cases in which one party sues in a representative capacity. N.J.S. 2A:81-2, as amended L. 1960, c. 52, § 45. I think the defendants have presented clear and convincing proof, but this is really a case where the result is dictated by the plaintiff's failure to show affirmatively that there are grounds for equitable relief. The cited statute cannot help in that respect a plaintiff who sues in a representative capacity.
At the commencement of trial plaintiff mentioned his general claim for an accounting of the firm's assets in addition *561 to the partnership's alleged interest in the life insurance money. It was agreed, as I recall, that time of all counsel would not be taken up with accounting details, and if necessary they might come later. I am, however, somewhat uncertain whether there are partnership matters apart from the insurance which require any additional hearing. If so, counsel can inform me when submitting a judgment in accordance with this opinion.
There will be judgment in favor of defendants and against plaintiff on all issues relating to the insurance policy on Bunnin's life and the proceeds of that policy. In the words of R.R. 4:55-2, there is no just reason for delay in entering that judgment, irrespective of future consideration of general accounting matters, and it shall be a final one.