IN MATTER OF TRUST ESTATE OF Ben G. SCHAEFER, Deceased: FIRST NATIONAL BANK OF KENOSHA, Trustee, Appellant: Marilynn H. SCHAEFER, Co-Appellant, v. Arthur E. SCHAEFER, Respondent.

Court of Appeals

*No. 78–451. Submitted on briefs April 18, 1979.—Decided July 20, 1979.*
(Also reported in 283 N.W.2d 410.)

362

For the appellant, briefs were submitted by *F. William Haberman* of *Michael, Best & Friedrich* of Milwaukee.

For the Co-Appellant, briefs were submitted by *Marilynn H. Schaefer,* Pro Se, of Kenosha.

For the respondent, a brief was submitted by *Brown, Black, Riegelman & Kreul* of Racine.

Before Brown, P.J., Bode, J., and Robert W. Hansen, Reserve Judge.

BROWN, P.J. This appeal involves a joint petition brought by Arthur E. Schaefer, co-executor of Ben G.

Schaefer's estate, and the First National Bank of Kenosha, trustee of the testamentary trust, for a declaration of rights.

Ben Schaefer died testate on October 22, 1969. His will was admitted to probate on December 9, 1969. Under the will his brothers, Arthur E. Schaefer and David E. Schaefer, and his sister, Sadie Stein, were named co-executors and co-trustees.

Among the assets of the estate at the time of Ben Schaefer's death were thirteen parcels of real estate held in the names of Ben G. Schaefer and Arthur E. Schaefer. During the administration of the estate, a challenge was made by Mrs. Marilynn Schaefer, Ben Schaefer's widow, to the claim that these parcels of real estate were owned by Ben and Arthur Schaefer as a partnership. The Wisconsin Supreme Court held that the real estate in question was partnership property. *In re Estate of Schaefer*, 72 Wis.2d 600, 241 N.W.2d 607 (1976).

Shortly after the supreme court's decision, by order of the Kenosha county probate court, the First National Bank of Kenosha was appointed trustee of the testamentary trust pursuant to Ben Schaefer's will. All of the remaining estate assets, including Ben Schaefer's partnership interest in the Ben G. Schaefer and Arthur E. Schaefer Real Estate Department (hereinafter referred to as the Schaefer Partnership), were assigned to the trustee.

After the partnership interest was assigned to the trustee, an accounting of the partnership assets, profits and losses was filed with the probate court. No objection was made to the accounting by the trustee.[1] The trustee did, however, dispute the manner in. which the present

---

[1] While the trustee made no objection to the accounting filed, Marilynn Schaefer, the lifetime income beneficiary of the trust, objected and filed suit in the Kenosha county circuit court for an accounting of the partnership assets. Her suit was dismissed for lack of standing to sue. She appealed the dismissal to this

value of Ben Schaefer's partnership interest is to be computed. Consequently, the trustee and Arthur Schaefer brought this action for a declaration of rights. In their petition, Arthur Schaefer contended that Ben Schaefer's interest (now the interest to be transferred to the trust) in the partnership was governed by sec. 178.37, Stats.[2] Thus, he claimed that the estate's interest is 50% of the date of death valuation plus 50% of the profits from the date of death to final settlement. The trust claimed that the deceased's partnership interest is 50% of the valuation of the partnership assets at the time of liquidation or final settlement which has not yet occurred. The partnership assets have substantially appreciated since Ben Schaefer's death. The major issue involved in this case is whether the trust is now entitled to 50% of the appreciated value of the real estate.

court and in *Schaefer v. Schaefer*, 89 Wis.2d 323, 278 N.W.2d 276 (1979), we reversed holding that the allegations in Mrs. Schaefer's complaint that the legal representatives had failed to act on her behalf was sufficient to give her standing to sue for an accounting.

[2] **178.37 Rights of retiring or deceased partner.** When any partner retires or dies, and the business is continued under any of the conditions set forth in s. 178.33(2)(b) or 178.36(1), (2), (3), (5) and (6), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at this option or at the option of his legal representative, in lieu of interest, profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by s. 178.36(8).

A hearing on the matter was held on April 13, 1978 in the probate court for Kenosha county. After the hearing and after both parties had submitted briefs on the issues, the trial court issued a written decision holding that the rights of the trustee are controlled by sec. 178.-37, Stats. Therefore, the trustee's interest in the Schaefer Partnership is limited to 50% of the partnership assets at the date of death valuation plus interest or profits accruing since death to the date of final settlement. On August 23, 1978, the trial court issued its decree declaring the rights of the trust pursuant to its decision. The trustee is appealing from this decree.

Before we reach the main issues in this appeal, two initial issues raised by the co-appellant, Marilynn Schaefer, must be addressed. At the outset of these proceedings, Marilynn Schaefer objected to the proceedings on the ground that the probate court lacked subject matter jurisdiction to proceed. Her argument was that since she had filed an independent action for accounting of the partnership assets, the dismissal of which was on appeal, the appeal stayed any lower court action on the subject matter of the appeal.[3] Since her appeal related to an accounting of the partnership assets, she argued that the probate court lacked subject matter jurisdiction. Jurisdiction over the subject matter was in the appellate courts.

We think Mrs. Schaefer's claim has no merit. In the present case, the trustee has not objected to the accounting of the partnership assets filed with the probate court. The sole concern in this case is whether the trustee is

[3] At the time these proceedings were had, Mrs. Schaefer's appeal was still pending before this court. As noted in footnote 1, this court decided her appeal, reversed the order dismissing her claim for an accounting and remanded the case for further proceedings.

entitled to a portion of the appreciated value of the assets since the death of Ben Schaefer. A determination of this suit has no effect on Mrs. Schaefer's suit for an accounting. Mrs. Schaefer sought an accounting of the value of the assets owned at the time of death. Her suit did not involve a dispute over the current market value of the assets nor the rights of the trustee to any appreciated value. Where an appeal is pending, matters not directly concerned with the appeal but related to the case are still properly within the trial court's jurisdiction. *See Hunter v. Hunter,* 44 Wis.2d 618, 621, 172 N.W.2d 167, 169 (1969). If Mrs. Schaefer succeeds in her suit for accounting, any additional funds due the trust could be transferred to the trust regardless of the result in the present case. Therefore, the trial court had subject matter jurisdiction to proceed. Mrs. Schaefer makes no claim, nor could she, that the probate court lacks subject matter jurisdiction for any reason other than that an appeal was pending in her accounting suit.

The second issue that must be addressed is whether the disposition of the merits of this case is controlled by our decision in *Schaefer v. Schaefer, supra* note 1. In that case, the sole issue presented on appeal was whether Marilynn Schaefer had standing to sue for an accounting. We held that under secs. 178.37 and 178.38, Stats., a suit for accounting must be brought by the legal representative, not a beneficiary, unless the legal representative had an adverse interest, refused *or failed* to act. Since Mrs. Schaefer had alleged that the surviving co-executors had either an adverse interest or had failed to act, she had standing to sue for an accounting. The holding in that case neither addressed nor resolved any issues relating to the rights of any of the parties to appreciation, profits or right to liquidate. Section 178.37, Stats., was merely referred to in determining who had standing to

sue for an accounting and the possible interest Marilynn Schaefer may have as a lifetime beneficiary.

As to her interest (sufficient to confer standing), we held that since the partnership had not as yet been wound up, at the very least the trust would be entitled to interest or profits which have accrued since the death of Ben Schaefer. That interest, if any, would be transferred to the trust of which Marilynn Schaefer is the lifetime income beneficiary and would receive some benefit. Therefore, she had an interest sufficient to confer standing. That decision did not, however, hold that sec. 178.-37, Stats., applied or controlled the estate's interest in the partnership assets. It, therefore, is not dispositive of any of the issues raised on this appeal.

Having disposed of the preliminary issues, we will now turn to the major issues raised on this appeal.

In the petition for a declaration of rights, at the hearing on the petition and on appeal, Arthur Schaefer claimed that, upon the death of a partner, sec. 178.37, Stats., applies in determining the value of the deceased partner's interest in the partnership. He claimed that under sec. 178.37, the trustee, as successor of the deceased partner's interest, was entitled to 50% of the date of death value of the partnership assets plus interest or 50% of the profits from the date-of death until final liquidation.

The trustee, on the other hand, claims that the trust is entitled to 50% of the appreciated value. To support its claim to the appreciated value, the trustee first asserted that Arthur Schaefer, as surviving partner, and Arthur Schaefer, David Schaefer and Sadie Stein, as personal representatives of the estate, created a new partnership. The partnership consisted of Arthur Schaefer and the estate of Ben Schaefer. At the hearing, partnership tax returns were introduced listing the estate as

a partner and showing income to the estate which was received from the partnership. The income was listed as partnership income. In addition, evidence was introduced showing that the estate shared equally in the expenses of the partnership as well as any profits made when assets were sold. Lastly, evidence was introduced showing that the partnership internal accounting procedures treated both the estate and Arthur Schaefer as equal partners. Both had draw accounts. The checking account was in the name of Ben Schaefer and Arthur Schaefer Real Estate Department. Rents were received and shared equally by Arthur Schaefer and the estate, and the estate was a party to all sales of partnership assets. Thus, the trustee's main claim was that Arthur Schaefer and the estate created a new partnership between themselves and continued to do business as a new partnership. As a result, the trustee, as successor to the estate's interest in the partnership, now has the right to permit the partnership to continue under the present arrangement where the estate and Arthur Schaefer share the expenses, losses and profits, or it may force dissolution and liquidation pursuant to secs. 178.26 and 178.32, Stats. Having the right to dissolve the partnership, the trust is entitled to an in cash distribution of 50% of the value of the assets at the time of liquidation pursuant to sec. 178.33 (1), Stats.[4]

---

[4] **178.33 Application of partnership property on dissolution. (1)** When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his co-partners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. But if dissolution is caused by expulsion of a partner, bona fide under the partnership agreement, and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under s. 178.31(2) he shall receive in cash only the net amount due him from the partnership.

Alternatively, the trustee claims that if no new partnership existed, there was a slow wind-up. Since the wind-up has not yet been completed, the trust is entitled to an amount equal to 50% of the surplus after creditors have been paid pursuant to sec. 178.33(1), Stats. Thus, the trust would be entitled to 50% of the appreciated value.

Lastly, if no new partnership was created between the estate and Arthur Schaefer and there was no slow wind-up, the trustee claims that the rights of the trust are not limited to date of death value plus interest or profits. The trustee asserts that before sec. 178.37, Stats., applies, the surviving partner and the personal representative must mutually elect to continue the business. Once this agreement is made, the legal representative then may elect to keep the deceased partner's share in the partnership and receive as a creditor the value of the deceased partner's interest as of the date of death or it may elect to liquidate. If it elects to take as a creditor, the legal representative has a second election to receive interest or profits from the date of death to final settlement. The trustee asserts that since no agreement was made to continue the business and since no election was made by the legal representatives to keep the deceased partner's share of the assets in the business and value that interest as the date of death value plus interest or profits, the trustee may now exercise these elections. Thus, the trustee claims that by exercising these elections, the trust is entitled to either permit the business to continue and become a creditor of the business with an interest equal to date of death value plus interest or profits or the trustee may elect to liquidate the partnership and receive 50% of the value of the partnership assets at the date of liquidation, whichever is greater.

The trial court rejected all of the trustee's positions. It held that the evidence showed that the estate was

listed as a partner solely for tax purposes and that the listing as a partner for tax purposes was insufficient evidence to show that a new partnership was created. Thus, the court held that no new partnership was created. The trial court further held that the trustee's rights to share in the partnership assets were controlled by sec. 178.37, Stats. The court ruled that sec. 178.37 applied automatically when a partner died, no election was required and, therefore, the trustee's interest was limited to 50% of the date of death value plus interest or profits. The court held open the question of whether the trustee was entitled to interest or profits.

The trustee is appealing both the trial court's holding that no new partnership was created and the ruling that the trust's interest is limited to date of death value plus interest or profits. The issues presented on appeal are: (1) Was the trial court's holding that no new partnership was created against the great weight and clear preponderance of the evidence; (2) Did the trial court err in holding that no election was required because sec. 178.37, Stats., controls a deceased partner's interest in partnership assets, and therefore a deceased partner's interest is limited to date of death value plus interest or profits.

## NEW PARTNERSHIP

Before a partnership will be found to have been created, there are four elements that must be proven.

Initially, the contracting parties must intend to form a bona fide partnership and accept the legal requirements and duties emanating therefrom. Secondly, there must exist a community of interest in the capital employed. Thirdly, there must be an equal voice in the management of the partnership. Finally, there must be a sharing and distribution of profits and losses. [Footnotes omitted.] *Skaar v. Department of Revenue,* 61 Wis.2d 93, 98–99,

211 N.W.2d 642, 645 (1973) quoted with approval in *In re Estate of Schaefer,* 72 Wis.2d at 605, 241 N.W.2d at 609.

The parties do not dispute the fact that the last three requirements were met. It is the first element—the intent of the parties—that is in dispute.

At the hearing, the trustee introduced evidence in an attempt to show that upon Ben Schaefer's death, a new partnership was formed between Arthur Schaefer and the estate to carry on the real estate business. The majority of this evidence involved tax returns filed on behalf of the estate listing the estate as a partner and the profits as partnership profits. The remainder of the evidence related to accounting procedures which treated the estate for accounting purposes in the same manner as Arthur Schaefer and under the same procedures used when Ben Schaefer was alive.

Under sec. 178.04 (4), Stats., receipt of a share of the profits of a business is prima facie evidence that the person or entity receiving the profits is a partner in the business. Tax returns which show the person or entity as receiving profits from the business are prima facie evidence that a partnership exists. *In re Estate of Schaefer,* 72 Wis.2d at 606, 241 N.W.2d at 610; *Karp v. Coolview of Wisconsin, Inc.,* 25 Wis.2d 299, 305, 130 N.W.2d 790, 793 (1964). Once a prima facie case is made that a partnership existed, the burden then shifts to the other party to show that no partnership existed.

In attempting to meet this burden, Arthur Schaefer testified that no new partnership was created or intended to be created. He testified that the accountants kept the books, and he did not know why they used the system they did. He clearly testified, however, that they were not directed to do so because the estate had been made a new partner. Arthur Schaefer also testified that the

estate was listed as a partner on the tax returns for tax purposes only. Arthur Schaefer introduced evidence to show that there was no intent to create a new partnership with the estate. He introduced deeds which listed his name as the seller and surviving partner of the Schaefer Partnership which owned the property. Documents were introduced to show that the estate was involved in the sales solely because of the fear that the estate may have some claim relating to the real estate as a result of Marilynn Schaefer's appeal to the supreme court challenging the existence of the Schaefer partnership. Quitclaim deeds relating to some of the real estate sold were introduced to show that no one considered the estate as a partner. Had the estate been a partner, there would have been no need for the estate to quitclaim any interest it had in the properties to the buyers. Lastly, evidence was introduced to show that when a dispute arose with one of the buyers of a parcel of real estate, Arthur Schaefer sued, as surviving partner, for specific performance. The estate was not a party to the litigation.

After reviewing all the evidence, the trial court made a finding of fact that Arthur Schaefer and the estate did not intend to create a new partnership between themselves, and therefore no new partnership existed.

Before we may set aside a finding of fact by the trial court, we must find that the finding of fact was against the great weight and clear preponderance of the evidence. *In re Estate of Schaefer,* 72 Wis.2d at 606, 241 N.W.2d at 610; *McDonald v. McDonald,* 53 Wis.2d 371, 381, 192 N.W.2d 903, 909 (1972). In light of the evidence submitted by Arthur Schaefer, which the trial court was entitled to believe, we cannot say that the finding was against the great weight and clear preponderance of the evidence. The tax lawyers and accountants may have considered the estate as being in a position, for tax and ac-

counting purposes, similar to a partner and, therefore, treated it as such. However, those facts do not necessarily reflect or show the intent of the parties. We cannot say the trial court erred in finding that no new partnership was created between Arthur Schaefer and the estate.

## CONTINUATION OF THE BUSINESS

The trial court held that upon the death of a partner, the deceased partner's interest in the partnership is automatically and exclusively controlled by sec. 178.37, Stats. The deceased partner's interest is limited to his share in the value of the assets of the partnerhip (in this case 50%) as of the date of death, plus interest or profits from the date of death until final settlement. The deceased partner's interest does not include a portion of any appreciation in the assets that has occurred from the date of death to final settlement. Thus, the trustee, as successor in interest, would not be entitled to 50% of the appreciated value of the assets. We think the trial court was in error in holding that sec. 178.37 controls in this case.

When a partner dies, the partnership is dissolved. Sec. 178.26(4), Stats. On dissolution, however, the partnership is not terminated; it continues until the wind-up of the partnership affairs are completed. Sec. 178.25(2), Stats. Winding-up is the process of settling partnership affairs after dissolution. Partners, or those claiming through a deceased partner, may agree to settle the partnership affairs without a liquidation of the assets (by agreeing to a cash settlement or in-kind distribution). However, absent an agreement, winding-up involves reducing the assets to cash (liquidation), paying creditors, and distributing to partners the value of their respective interests. *Dreifuerst v. Dreifuerst*, 90 Wis.2d 566, 280

N.W.2d 335 (1979); *see also Logoluso v. Logoluso,* 43 Cal. Rptr. 678 (1965); *Young v. Cooper,* 30 Tenn. App. 55, 203 S.W.2d 376 (1947); *Gathright v. Fulton,* 122 Va. 17, 94 S.E. 191, 194 (1917); J. CRANE AND A. BROMBERG, LAW OF PARTNERSHIP §§73 and 80(c) (1968) [hereinafter cited as CRANE AND BROMBERG].

Ordinarily, upon dissolution due to death of a partner, it is the duty and responsibility of the surviving partner to wind up the partnership with due diligence and pay the estate of the deceased partner the value of his interest in the partnership. *Lamp v. Lempfert,* 259 Iowa 902, 146 N.W.2d 241 (1966); *Hutchinson v. Goceliak,* 73 N.J. Super. 550, 180 A.2d 359 (1962); *In re Grace's Estate,* 62 Misc.2d 51, 308 N.Y.S.2d 33 (1970); CRANE AND BROMBERG, *supra,* §83(a). The surviving partner, however, need not wind up the partnership if he has a right to continue the business. CRANE AND BROMBERG, *supra,* §§83 (a) and 86.

Thus, the first question is whether Arthur Schaefer, as surviving partner, had the right to continue the business. If Arthur Schaefer, as surviving partner, had the right to continue the business *and* the business was continued, then the trust's interest in the partnership is governed by sec. 178.37, Stats. If Arthur Schaefer had no right to continue the business or decided not to exercise his right to continue the business, the partnership was in the process of winding up. If the partnership was being wound up, the trustee would be entitled to receive the value of Ben Schaefer's interest at the date of liquidation or final settlement pursuant to sec. 178.33(1), Stats.

Arthur Schaefer's right, as surviving partner, to continue the business is controlled by sec. 178.36(1), (2)

or (3), Stats.[5] Under sec. 178.36 (1), Stats., the business may be continued if the legal representative of the deceased partner assigns the deceased partner's rights to two or more surviving partners or a surviving partner and a third person. The business may be continued under sec. 178.36 (2), Stats., if the legal representative of the deceased partner assigns the deceased partner's interest to the surviving partner. Under sec. 178.36 (3), Stats., the business may be continued by the surviving partner if the legal representative of the deceased partner consents to the continuation without liquidation of the partnership affairs. *Blumer Brewing Corp. v. Mayer,* 223 Wis. 540, 545, 269 N.W. 693, 695 (1936).[6]

[5] 178.36 **Right and liabilities on continuing business after dissolution without liquidation.** (1) When any new partner is admitted into an existing partnership, or when any partner retires and assigns (or the representative of the deceased partner assigns) his rights in partnership property to 2 or more of the partners, or to one or more of the partners and one or more 3rd persons, if the business is continued without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business.

(2) When all but one partner retire and assign (or the representative of a deceased partner assigns) their rights in partnership property to the remaining partner, who continues the business without liquidation of partnership affairs, either alone or with others, creditors of the dissolved partnership are also creditors of the person or partnership so continuing the business.

(3) When any partner retires or dies and the business of the dissolved partnership is continued as set forth in subs. (1) and (2), with the consent of the retired partners or the representative of the deceased partner, but without any assignment of his right in partnership property, rights of creditors of the dissolved partnership and of the creditors of the person or partnership continuing the business shall be as if such assignment had been made.

[6] *Blumer* involved an interpretation of sec. 123.36, Stats. (1935). Section 123.36, Stats. (1935), was renumbered sec. 178.36, Stats. Sections 178.36 (1), (2) and (3), Stats., are identical to sec. 123.-36 (1), (2) and (3), Stats. (1935).

Since Arthur Schaefer is the sole surviving partner and no assignment was made by the legal representative, the only section applicable to this case is sec. 178.36(3), Stats. Arthur Schaefer had the authority to continue the business if he had the consent of Ben Schaefer's legal representatives.

Arthur Schaefer, David Schaefer and Sadie Stein were named as Ben Schaefer's legal representatives. As the legal co-representatives, they had the power to consent to the continuation of the business. *Blumer Brewing Corp. v. Mayer,* 223 Wis. at 545–47, 269 N.W. at 695–96. Specific consent is not required. Acquiescence by the legal representatives in the continuation of the business is sufficient for consent under sec. 178.36(3), Stats. *Blumer Brewing Corp. v. Mayer,* 223 Wis. at 548, 269 N.W. at 696; CRANE AND BROMBERG, *supra,* §86(c), at 495–96.

The determination of whether or not the legal representative consented to or acquiesced in the continuation of the business is a fact to be determined by the trier of fact. Since the trial court felt that sec. 178.37, Stats., applied whenever a partner died, regardless of whether there was consent to continue the business, no finding of fact was made on consent. Ordinarily, under these circumstances, we would have to remand the case back to the trial court for a finding of fact. However, in this case we do not feel a remand for that purpose is necessary. If consent was given, Arthur Schaefer, as the most active legal representative and as the surviving partner, was the person authorized to give consent. He was the only person who testified at the hearing. Based on his own testimony the record is clear that the legal representatives did not consent to or acquiesce in the continuation of the business.

Arthur Schaefer testified that because he was closest to the partnership affairs and more familiar with them,

he was the most active of the legal co-representatives. He testified that he never discussed with anyone the possibility of the estate becoming a partner, nor did he discuss whether the business would continue. It was apparent from the record that none of these issues were discussed for two reasons. First, Arthur Schaefer did not know that he had to elect, as both surviving partner and legal representative, to either continue the business or liquidate. Second, he never thought about the alternatives because it was his intention from the very beginning to wind up the partnership and pay the estate the deceased partner's interest.

His intention to wind up the partnership affairs is clear both from Arthur Schaefer's testimony and his actions during the period commencing with Ben Schaefer's death to the present. Arthur Schaefer testified that after Ben Schaefer's death he began winding up the partnership affairs and liquidating the assets. Marilynn Schaefer then brought suit challenging the existence of the Schaefer Partnership and, as a consequence, Arthur Schaefer ceased liquidating the assets pending the supreme court's decision on Mrs. Schaefer's suit.[7] Once

---

[7] *Direct Examination of Arthur Schaefer*

. . . .

Q. Now, during the administration of the Estate, was there a period of time within which you did undertake to wind up the partnership affairs and to sell certain of the properties owned by the partnership?

A. Yes, I did.

Q. And then is it a fact that the very existence of the partnership was challenged by Mrs. Schaefer?

A. Yes.

Q. And that matter, that issue was appealed to the State Supreme Court?

A. Yes.

Q. And that thereafter it was determined by that court that there was in fact a partnership?

A. Yes.

the supreme court had determined there was a partnership, he began again to wind up the affairs. A trustee was appointed for the testamentary trust and the present petition for a declaration of rights was brought to determine the estate's interest so that wind-up could be completed. With the exception of the initial assets that were sold when Arthur Schaefer began the winding-up process, everything else was kept the same as it had been when Ben Schaefer was alive. All the rents were shared equally, profits were split equally, there were draw accounts for both Arthur Schaefer and the estate, the checking account remained the same and all expenses were shared equally. No new debts were incurred, nor were any new properties bought. It was clear that Arthur Schaefer attempted to keep the partnership affairs at a status quo until the existence of the partnership was finally determined and he could safely resume winding up.

All of his actions in liquidating or selling the partnership properties were also consistent with winding up. For purposes of winding up the partnership affairs after dissolution due to death, the deceased partner's rights in the real estate owned by the partnership pass to the surviving partner so that he can convey it in the course of liquidation without joinder of the decedent's heirs or representatives. CRANE AND BROMBERG, *supra*, §83(a), at 470. As Arthur Schaefer testified and as the documents show, Arthur Schaefer conveyed the properties sold as surviving partner in the process of wind-up. The only reason the estate was asked to sign the deeds and quitclaim the estate's interest in the properties to the buyers was because the buyers insisted on it, fearing that the

---

Q. Now, there are certain properties still remaining in the partnership that have not been so liquidated.
A. Yes.

estate would have a claim against them if the properties were found to be the property of Ben and Arthur Schaefer as tenants in common and not assets of the partnership.

Therefore, it is clear from the record that the business was not continued pursuant to sec. 178.36(3), Stats., but was instead a slow wind-up due to the pending litigation. There was no agreement to continue the business nor was there acquiescence in the continuation of the business. Arthur Schaefer in either capacity (surviving partner and legal representative) did not want to continue the business. He wanted to wind it up. He began to do so when he was *forced,* because of Marilynn Schaefer's suit, to stop the winding-up process and keep everything at the status quo until the existence of the partnership was finally determined.

Under these circumstances, the rights of the partners are controlled by sec. 178.33(1), Stats., not sec. 178.37, Stats. Section 178.37, Stats., only applies if the "business is continued under any of the conditions set forth in s. 178.33(2)(b) or 178.36(1), (2), (3), (5) and (6)." Here the business was not continued under the conditions set forth in sec. 178.36(3), the only section applicable. The business was being wound up, albeit slowly, because of the litigation. Thus, sec. 178.33(1), Stats., applies.

Where the business is not continued but is being wound up, the value of the deceased partner's interest is not determined by the date of death value plus interest or profits, as is the case if the business is continued.

If a partnership is seasonably wound up after dissolution, *profits and losses* during the liquidation are shared by the partners in proportion to their predissolution ratios, unless they have agreed otherwise. This is a corollary of the continued existence of the firm during the

[winding-up] period [in accordance with sec. 178.25(2)], and of the partners' representative authority in winding up [in accordance with secs. 178.28 and 178.30, Stats.] [Emphasis added.] [Footnotes omitted.] CRANE AND BROMBERG, *supra*, §86(c), at 495.

Where the business is continued, the value of the deceased partner's interest may be different. Under §42 of the Uniform Partnership Act, as adopted in Wisconsin in sec. 178.37, Stats., if the business is continued under the conditions set forth in secs. 178.33(2)(b), 178.36(1), (2), (3), (5) or (6), Stats:

[T]he non-continuing partner (or his representative) has a *first election* between two basic alternatives, either of which can be enforced in an action for an accounting. He can force a liquidation, taking his part of the proceeds and thus sharing in profits and losses after dissolution. Alternatively, he can permit the business to continue (or accept the fact that it has continued) and claim as a creditor (though subordinate to outside creditors) the value of his interest at dissolution. This gives him a participation in all values at dissolution, including asset appreciation and good will, and means he is unaffected by later changes in those values. If he takes the latter route, he has a *second election* to receive in addition either interest (presumably at the local legal rate) or profits from date of dissolution. [Emphasis in original.] [Footnotes omitted.] CRANE AND BROMBERG, *supra*, §86(c), at 495–96.

*See also Cauble v. Handler,* 503 S.W.2d 362, 366 (Tex. Ct. App. 1973).

Therefore, where the business is continued pursuant to the sections listed in sec. 178.37, Stats., the deceased partner takes as a creditor the value of his interest at the date of death, including asset appreciation and good will up to that date, plus interest or profits from the date of death to final settlement. The "profits," however, do not include asset appreciation. *Rosen Trust v. Rosen,* 53

A.D.2d 342, 386 N.Y.S.2d 491, 502 (1976). His share is unaffected by changes in values after date of death. If the surviving partner winds up the partnership or the deceased partner's representative elects to wind it up and liquidate, the estate shares in all profits including appreciation and takes the risk of suffering the losses. By permitting the business to continue and taking as a creditor, the deceased partner's interest is insulated from losses after dissolution, but he also does not share in asset appreciation after dissolution.

Where the business is wound-up, the deceased partner's interest is not determined until the wind-up is complete. After the creditors have been paid, all profits are shared by the surviving partner[s] and the deceased partner, as well as losses based on their predissolution ratios (in this case 50%). Therefore, where the business is wound-up rather than continued under the conditions set forth in sec. 178.37, Stats., the deceased partner's interest is the value of his interest at the date of liquidation (when wind-up is complete). This value includes assets appreciation during the winding-up period and is subject to any losses incurred during that time. *Mahan v. Mahan,* 107 Ariz. 517, 489 P.2d 1197 (1971) ; *Hurley v. Hurley,* 33 Del. Ch. 231, 91 A.2d 674 (1952) ; *Essay v. Essay,* 175 Neb. 689, 123 N.W.2d 20, modified on other grounds, 175 Neb. 730, 123 N.W.2d 648 (1963) ; *Young v. Cooper,* 30 Tenn. App. 55, 203 S.W.2d 376 (1947).

Arthur Schaefer points our attention to *McDonald v. McDonald,* 68 Wis.2d 292, 228 N.W.2d 727 (1975), and argues that case is dispositive of this case, and the value of the deceased partner's interest is controlled by sec. 178.37, Stats. We disagree.

In *McDonald,* Chester S. McDonald, Sr. (father), Margaret McDonald (mother), and their four sons (Chester R., Ronald, James and Robert ) were partners in a family-

owned partnership known as McDonald Investment Company. They also formed a corporation which they called the McDonald Lumber Company, Inc. When the father died in 1960, the remaining five partners continued the partnership and the corporation. When the mother died in 1965, the four surviving partners continued both businesses until dissension amongst the brothers occurred. In 1967, Chester R. McDonald, Jr., was voted out of the corporation and his employment terminated. He then brought two actions to dissolve and liquidate the corporation and the partnership. During the dissolution proceedings, a dispute arose over what property belonged to the corporation and what property belonged to the partnership. On appeal, all the property was found to be partnership property subject to the partnership liquidation. *McDonald v. McDonald,* 53 Wis.2d 371, 192 N.W.2d 903 (1972). The case was remanded to the trial court to proceed with the liquidation.

During the liquidation, a dispute arose over the value of the father's share in the partnership. After the father's death, the mother and the four remaining sons agreed that the father's estate would not receive profits. Two of the heirs to the father's estate claimed that the father's estate was entitled to interest or profits from the date of death until final settlement. The supreme court held that the mother and the four sons could not agree to deprive the estate of both interest and profits. Section 178.37, Stats., controlled, and the estate was entitled to elect between interest or profits. *McDonald v. McDonald,* 68 Wis.2d at 301–02, 228 N.W.2d at 732–33.

In *McDonald,* there was an agreement to continue the business after each death. The supreme court stated:

The issues which are present in this appeal arise from the fact that when the father died in 1960 *the mother, as executor and as a surviving partner, agreed with the four surviving partner sons that as the business continued,*

the father's estate would receive none of the partnership profits. . . . In 1965 the mother died . . . . *The four surviving partner sons then agreed that as the business continued* the mother's estate would receive one-fifth of the partnership profits. [Emphasis added.] *McDonald v. McDonald,* 68 Wis.2d at 297, 228 N.W.2d at 730.

There was an agreement between the legal representatives and the surviving partners to continue the business without a settlement of accounts with the estate pursuant to sec. 178.36(3), Stats. Under these circumstances, the deceased partner's interest (father's) was governed by sec. 178.37, Stats., and the estate was entitled to interest or profits from the date of the father's death until final settlement. *McDonald* did not hold that sec. 178.37, Stats., applies regardless of whether the business is wound-up or continued. To interpret *McDonald* in this manner would be to destroy the distinction between a wind-up and a continuation of the business. It would also destroy the distinction between secs. 178.33(1) and 178.37, Stats. Lastly, it would eliminate the necessity for the language in sec. 178.37, Stats., which states: "When any partner retires or dies, *and the business is continued under any of the conditions set forth in s. 178.33(2)(b) or 178.36(1), (2), (3), (5) and (6), . . . .*" [Emphasis added.] We do not believe the supreme court intended such results.

In the present case, unlike *McDonald,* there was no agreement to continue the business. The only decision that was made regarding the Schaefer partnership was to wind it up as soon as possible. Therefore, sec. 178.37, Stats., does not apply. Section 178.33(1), Stats., applies, and the estate is entitled to 50% of the proceeds, including asset appreciation, at the time of liquidation or final settlement.

The last issue which must be addressed is the trustee's argument that since there was no agreement between the

surviving partner and the legal representative to liquidate or continue the business and take as a creditor the date of death value and since no election was made between interest or profits, the trustee is now entitled to make these elections. He asserts that he now has the right either to force liquidation and receive 50% of the value of the assets at the time of liquidation or consent to the continuation of the business, taking the value of the deceased partner's interest at death as a creditor with an option for interest or profits, whichever is greater. We disagree for two reasons.

Both the trustee and Arthur Schaefer represented on appeal that if any agreements or elections can now be made, the trustee has the right, as successor in interest to the deceased partner's partnership interest, to make those decisions. Both parties are in error.

All elections under sec. 178.37, Stats., as well as the decision to permit the surviving partner to continue the business under sec. 178.36(3), Stats., must be made by the legal representative of the deceased partner. The trustee is not the legal representative of the deceased partner. He is merely the trustee of the testamentary trust that will eventually receive the money which represents the deceased partner's interest in the partnership. Arthur Schaefer and Sadie Stein are still the executors of the estate. Therefore, they are still the legal representatives, and any elections would have to be made by them, unless a special administrator is appointed by the court.

However, there are no remaining elections to be made by anyone. Arthur Schaefer, as surviving partner and as the most active legal representative elected to wind up the partnership, as he had a right and responsibility to do absent an agreement to continue the business. Once that decision was made, the elections under sec. 178.37,

Stats., were not available to the deceased partner's legal representatives. They could not elect to take the value of the deceased partner's interest at dissolution as a creditor with an option for interest or profits. The rights of the parties are governed by sec. 178.33(1), Stats. The deceased partner's interest is determined as of the date of liquidation. He shares in all profits, including any appreciation and shares in any losses. The parties may, of course, agree otherwise, sec. 178.33(1), but without an agreement the value at liquidation controls. There is no election under sec. 178.33(1) to take date of dissolution value plus interest or profits or date of liquidation value, whichever is greater.

*By the Court.*—Decree reversed and case remanded for liquidation of all assets and distribution of the surplus, after payment to creditors, to the deceased partner's estate and the surviving partner, 50% to each, unless otherwise agreed.

HANSEN, J. (concurring). Two brothers, Benjamin and Arthur Schaefer, were partners in a real estate business, with expenses shared and profits divided 50/50 between the two brothers. When Ben died in 1969, the partnership of the two brothers terminated. *See* sec. 178.37, Stats. (1975).

For more than eight years, however, the business continued to be run, with the Estate of Ben stepping into Ben's shoes, with expenses shared and profits divided between Arthur and the Estate of Ben. This action was brought for a declaration of clarification of rights of Arthur and the Estate of Ben as to increments in value of properties held by the original partnership at the time of Ben's death.

Do such increments in value over the eight-year period go solely to Arthur, or are they to be shared 50/50 between Arthur and the Estate of Ben? If, as Arthur now

contends and the trial court agreed, Arthur was a sole proprietor doing business for the eight years as the only surviving partner, the increased values inure to his benefit alone. If, the majority of this court holds, Arthur was only "winding up" the initial two-brother partnership, albeit rather slowly, the Estate of Ben, represented now by the bank trustee, receives one-half of the value of the partnership assets at the time of final dissolution. If, as this writer concludes, a new partnership between Arthur and the Estate of his brother Ben was created and existed for the eight-year period, then upon dissolution, the assets of the new partnership, or value thereof, are to be divided 50/50 between Arthur and his new partner, the Estate of Ben.

Testing whether there is here a new partnership between Arthur and the Estate of Ben starts with the statute, taken from the Uniform Partnership Act, defining a partnership as an "association of 2 or more persons to carry on as co-owners a business for profit." Sec. 178.03(1), Stats. Our Wisconsin Supreme Court has held that "four elements need to be met so as to qualify as a partnership." *In re Estate of Schaefer*, 72 Wis.2d 600, 605, 241 N.W.2d 607, 609 (1976), quoting *Skaar v. Department of Revenue*, 61 Wis.2d 93, 98, 211 N.W.2d 642, 645 (1973). These four elements are:

Initially, the contracting parties must intend to form a bona fide partnership and accept the legal requirements and duties emanating therefrom. Secondly, there must exist a community of interest in the capital employed. Thirdly, there must be an equal voice in the management of the partnership. Finally, there must be a sharing and distribution of profits and losses. [Footnotes omitted.] *Skaar v. Department of Revenue*, 61 Wis.2d at 98–99, 211 N.W.2d at 645.

Starting with the fourth test, it is evident and undisputed that there was a 50/50 sharing of profits and

losses for the eight-year period between Arthur and the Estate of Ben. Books and accounts of the eight-year operation show Arthur and the Estate of Ben credited with profits and charged for losses, share and share alike. Withdrawals between the two were always equal, rent expenses were distributed equally between them, and gains from sales of underlying partnership assets were distributed equally between them, adjusted at times for different depreciation rates. The fourth test is met here.

The third test—the requirement of an equal voice between the partners in the management of the partnership—is not disputed. It hardly could be. Arthur Schaefer was not only a surviving partner of the original two-brother partnership, but, until removed as such, he was named in Ben's will as co-executor of the estate. Even before the death of his brother David, also a co-executor, Arthur was the most active personal representative of the estate. By reason of his dual role, an exactly equal voice in management was assured to Arthur, as survivor, and the Estate of Ben, represented by him as co-executor. The third test is met here.

As to the second test—that there be a community of interest in the capital employed—there is and can be no issue raised. As the books and accounts make clear, every dollar of operating expense or loss was charged 50/50 to both Arthur and the Estate of Ben, and every dollar of profit or income was divided 50/50 between them. An exactly equal community of interest was shared by both Arthur and the Estate of Ben in the capital here involved. The second test is met here.

As to the first test—a shared intent to form a bona fide partnership and accept the legal requirements and duties emanating therefrom—the picture is blurred and the situation confused by the fact that Arthur wore two hats, or had two hats to wear, at the times here important. He was the sole survivor of the partnership with

his brother Ben. He also was co-executor and most active personal representative of the estate of his brother. Ordinarily, in a situation such as this, one would look to communications and contacts between a surviving partner and a bank, executor or widow of the deceased partner. However, here the survivor and the representative of the estate are one and the same person. Who is to say which hat, or both, he has elected to put on his head at a particular time? When he testifies, as he did here and to his own advantage, that he as survivor and he as representative of the estate of his brother never intended a new partnership be created, who is there to gainsay him?

However, between these parties, as to the existence of a partnership relation between them, what was done by and for the parties speaks as eloquently as words from a witness stand. Whether a new partnership between survivor and estate was created, one court has held, is to be gathered from all of the facts and circumstances. *Keller v. Keller,* 4 Ill. App. 3rd 89, 280 N.E.2d 281 (1972). Review of the facts and circumstances in the case before us, on the issue of intent of the parties to carry on the business in a new partnership, leads to the following observations and conclusion.

Facts and circumstances in this record that establish an intent of survivor Arthur and the Estate of brother Ben to carry on the real estate enterprise as partners include the following:

*Will.* Ben Schaefer's will specifically authorized the executors to cause the estate "to become or remain a partner, general or special, in any business."

*Petition.* In a petition to the Probate Court for instructions on September 17, 1971, Arthur and his co-executors asked the court: "As to whether the Real Estate Partnership shall attempt to dispose of said real

estate and the co-executors *as partners* of said Real Estate Partnership shall accept on behalf of the Estate one-half (½) of the net proceeds thereof." The reference, italicized for emphasis, clearly has Arthur and his co-executors acting *as partners* on behalf of the estate. The last will and testament of Benjamin Schaefer provided: "Said trustees shall take possession of, hold, manage and control said property, with power to rent or lease same, shall collect all rents, incomes, issues and profits thereof." The petition for instructions filed by the co-executors as trustees indicates no dissent from the expressed will of the testator. Instead, it shows that they viewed themselves as acting *as partners* for the estate in the real estate operations.

*Returns*. During the years of business operation following the death of Ben, partnership tax returns, state and federal, were caused to be prepared by Arthur and then reviewed and signed by him. These tax returns show the Estate of Ben to be a partner with Arthur showing that all income of the real estate operation was shared equally between them as partners, and that all expenses of the real estate operation were shared equally between them as partners. Form K–1 filed with federal partnership income tax returns and submitted to the Estate of Ben for its tax purposes showed the estate as a partner in the real estate operation. As to the tax treatment of income received, our Wisconsin Supreme Court has held that "receipt of a share of business profits, as shown in tax returns, is *prima facie* evidence of partnership, under sec. 178.04 (4), Stats." *In re Estate of Schaefer*, 72 Wis.2d at 606, 241 N.W.2d at 610. Arthur now claims that his repeated representation in tax returns that a partnership existed between himself as survivor and the Estate of Ben were made just "for tax purposes." However, we deal here with only the intent of the parties. On that narrow issue, what he said "for tax purposes"

was made for all purposes. At the least, it is not easily retractable when the issue becomes whether he intended to continue the business as a joint partnership with the estate rather than as a sole proprietorship as he now claims.

*Capital Gains.* Following the "Section 754 election" in the 1970 partnership tax return filed, and entirely consistent therewith, Arthur distributed one-half of capital gains realized by the partnership to the Estate of Ben, and the Estate paid taxes thereon. We need not deal with all consequences of Arthur's belated claim that, as a sole proprietor, he should not have paid one-half of capital gains realized in the real estate operations to the Estate of Ben. We deal here solely with the intent of the parties to form a partnership between them. The distribution of its partnership share of the realized capital gains to the Estate of Ben by Arthur clearly shows the intent of the parties to operate the business as a partnership between them.

*Election.* Arthur, through his accountant, filed what is known as a "Section 754 election," stating for himself as surviving partner and the Estate of Ben: "The partnership hereby elects to apply the provisions of [I.R.C.] Section 734(b) and Section 743(b) *in connection with the transfer of assets* at death of Ben G. Schaefer *to Estate of Ben G. Schaefer."* [Emphasis added.] An election under I.R.C. §754 can, but need not, be used in connection with a transfer of assets to a new partner, and the election in this case expressly referred to the transfer of Ben's assets to the estate. It goes beyond a continuation of the preexisting partnership to provide for a "transfer of assets." This is consistent only with the business continuing with Arthur and the Estate of Ben as partners in a new partnership. In this respect, the books and records of the business, after the death of Ben, go beyond establishing a sharing of profits and

losses between Arthur and the Estate of Ben. They also establish the division of realized capital gains between Arthur and the Estate of Ben. Such complete sharing of income, losses, and capital gains clearly reveals that the partners, Arthur and the Estate of Ben, conducted the enterprise as a full partnership between them, and intended to do so.

On the scales, against this overpowering evidence of the existence of a partnership between Arthur and the Estate of Ben, there lies only the courtroom testimony of Arthur that he intended to operate as a surviving partner and sole proprietor. This self-serving testimony is here eroded, if not erased, by the earlier inconsistent statements of Arthur declaring the continued operation for over eight years to be a partnership enterprise of himself and the Estate of Ben. Quite aside from being federal or state tax returns, each such tax return is a statement by him to a governmental authority that the real estate operation was a partnership, which was being operated and was taxable only as a partnership between himself and the Estate of Ben. Actually, Arthur whistled the partnership tune so often for so many years that there is not much wind left for his whistling the tune of solo performer now. It is true that Arthur sees support for his change of tune in his having signed some documents, primarily sales agreements, as a "surviving partner" during the eight-year period. In a sense, Arthur was, as to the initial partnership between him and Ben, the survivor or "surviving partner," even though after Ben's death he had taken on a new partner, the Estate of Ben.

As to the weight to be given to occasional references to himself as the survivor, the writer notes what the Wisconsin Supreme Court said in the case involving the same parties about references to "tenants in common" on a handful of deed conveyances to Arthur and Ben. The high court held: "Even if this would be sufficient to overcome the statutory presumption, it must be weighed

against the overwhelming mass of evidence showing that the lands were purchased with partnership funds, managed as a partnership activity, and sold for partnership benefit." *In re Estate of Schaefer,* 72 Wis.2d at 606, 241 N.W.2d at 610. On very nearly the same issue, with very nearly the same overwhelming evidence as to a partnership being intended and actually existing between Arthur and the Estate of Ben, the writer would conclude that the overwhelming weight and near complete preponderance of the evidence in this record establishes that a new partnership was established between Arthur and the Estate of Ben which existed during the more than eight years of continued business operation after the death of Ben. So concluding and holding, the writer would reverse and remand to the trial court for further proceedings consistent with such holding and such opinion.